[Cite as *Dublin v. RiverPark Group, L.L.C.*, 2022-Ohio-1294.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| City of Dublin, | : | |
| Plaintiff-Appellee, | : | |
| | | No. 21AP-115 |
| v. | : | (C.P.C. No. 15CV-8662) |
| RiverPark Group, LLC, | : | (REGULAR CALENDAR) |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on April 19, 2022

**On brief:** *FROST BROWN TODD, LLC*, *Jeremy M. Grayem*, and *Yazan S. Ashrawi*, for appellee. **Argued:** *Yazan S. Ashrawi.*

**On brief:** *Karen Edwards-Smith*; and *Warner Mendenhall*, for appellant. **Argued:** *Karen Edwards-Smith.*

APPEAL from the Franklin County Court of Common Pleas

KLATT, J.

{¶ 1} Defendant-appellant, RiverPark Group, LLC, appeals a judgment of the Franklin County Court of Common Pleas that denied RiverPark's motion for relief from a judgment compensating RiverPark for an appropriation of property by plaintiff-appellee, the City of Dublin. For the following reasons, we affirm the trial court's judgment.

{¶ 2} On September 30, 2015, Dublin filed a complaint seeking a 0.130 acre permanent easement and 0.036 acre temporary easement from RiverPark's property in order to construct a shared-use path adjacent to Riverside Drive and roadway improvements at the intersection of State Route 161 and Riverside Drive. Although Dublin

had extended a good faith offer for the property, Dublin and RiverPark could not agree on a purchase price. Dublin, consequently, filed an action for appropriation of the property.

{¶ 3} A jury trial to determine the amount of compensation due to RiverPark for the taking occurred on June 11, 12, and 13, 2018. Robert Weiler testified as an expert witness in real estate appraisal and valuation for Dublin. Weiler is a licensed real estate appraiser and a member of the American Institute of Real Estate Appraisers. He has been appraising real estate for approximately 60 years.

{¶ 4} Weiler explained that he is the chairperson of the board of The Robert Weiler Company, a full service real estate and appraisal firm. Weiler's son, Skip Weiler, who is the president of the company, oversees the brokerage side the business. Weiler manages the appraisal side.

{¶ 5} In response to the questioning of Dublin's attorney, Weiler testified that Dublin paid his company $3,500 to appraise the RiverPark property being appropriated. Weiler clarified that the fee was based on the scope of work required, not on the ultimate conclusions he reached. Weiler testified that Dublin did not direct his analysis or conclusions, nor did Dublin influence his determination of the fair and just compensation owed to RiverPark for the appropriated property. To reinforce Weiler's independence and neutrality as an appraiser, Dublin's attorney elicited the following testimony:

> Q. * * * In a case such as this, is your appraisal in any way dependent on the party that's retained you as an expert?
>
> A. Absolutely not.
>
> Q. Can you elaborate on that a little bit?
>
> A. Well, I -- I have no dog in this hunt, as they say. I -- I want the property owner to get every dime they're entitled to, but whatever your decision is does not affect my compensation, so I'm not -- I'm not involved in -- in the decision you make.
>
> Q. So your appraisal value is not impacted in any way by virtue of whether you're retained by the landowner or the appropriating entity?
>
> A. None.

(Tr. at 203-04.)

{¶ 6} Weiler first appraised the property constituting the two easements in a "Value Finding Appraisal Report" dated January 15, 2015. In that report, Weiler set the fair market value estimate of the property taken at $35,930. Weiler later conducted a full summary appraisal of the property and published a report dated March 12, 2018, but with an effective date of September 30, 2015, the date of the take. In that second appraisal, Weiler again valued the easements at $35,930. Dublin offered both reports as trial exhibits, and Weiler explained his valuation of the property to the jury.

{¶ 7} RiverPark did not offer any expert testimony regarding the valuation of the easements. Rather, Carol Oldham, a representative of RiverPark, testified to the valuation. Oldham stated that RiverPark sought $500,000 for the "actual take" and $50,000 for the temporary easement. (Tr. at 147, 171.) RiverPark also sought compensation of $1.8 million for "damage to the access" and $5 million for "the taking of the entryway [that] eliminates the highest and best use" of the remainder of the property. (Tr. at 172.)

{¶ 8} At the conclusion of the trial, the jury returned a verdict awarding $35,930 in compensation for the easements taken. The trial court entered judgment on that verdict on July 11, 2018.

{¶ 9} On January 17, 2019, RiverPark moved for relief from the July 11, 2018 judgment under Civ.R. 60(B)(2) and (3). In its motion, RiverPark first asserted that it had discovered new evidence that it could not have discovered, even acting with due diligence, in time to move for a new trial under Civ.R. 59(B). RiverPark contended this new evidence was a contract entitled "Commercial Agency Agreement" (the "brokerage agreement") that The Robert Weiler Company ("Weiler Company") and Dublin executed on June 20, 2018, only seven days after Weiler testified at trial.

{¶ 10} In the brokerage agreement, Dublin retained Weiler Company as Dublin's exclusive agent to negotiate the purchase of 28.84 acres of property on Eiterman Road in Dublin. The brokerage agreement entitled Weiler Company "to a fee of * * * 5 % of the total sale price if property is purchased." (Ex. A-2 at Section 4, Def.'s Mot. for Relief from Jgmt.) Dublin ultimately purchased the Eiterman Road property through Weiler Company for $4,263,000, entitling Weiler Company to a $213,150 fee.[1] According to RiverPark, the

---

[1] Pursuant to the brokerage agreement, "[p]ayment of the [five percent] fee shall be satisfied first from any compensation offered by the listing broker. [Weiler Company] will attempt to negotiate for payment of the fee by the seller * * *, however, [Dublin] is responsible for payment of the fee." (Ex. A-2 at Section 4.) In the Real Estate Purchase Contract, the seller of the property agreed to pay Weiler Company three percent of the purchase price. (Ex. A-1, Real Estate Purchase Contract at Section 18(b), Def.'s Mot. for Relief from

possibility of the brokerage agreement and potential fee precluded Weiler from providing an "independently and impartially" prepared appraisal of RiverPark's property, as required by R.C. 169.59(C). Thus, RiverPark argued, the trial court should set aside the July 11, 2018 judgment.

{¶ 11} Second, RiverPark argued, Weiler engaged in misrepresentation when he testified that he had "no dog in this hunt," (Tr. at 204), and when he certified in his January 2015 "Value Finding Appraisal Report" that he had "no personal interest or bias with respect to" Dublin, (Pl.'s Ex. D). Weiler, RiverPark contended, had an interest in securing the brokerage agreement with Dublin, which defeated his claimed impartiality.

{¶ 12} In a judgment dated February 19, 2021, the trial court denied RiverPark's motion. RiverPark now appeals the February 19, 2021 judgment, and it assigns the following errors:

> [1.] The trial court erred in denying RiverPark's motion for relief from judgment under Civ.R. 60(B).
>
> [2.] The trial court erred in denying a hearing on RiverPark LLC's Civ.R. 60(B) motion.

{¶ 13} By its first assignment of error, RiverPark argues that the trial court erred in denying it relief from the July 11, 2018 judgment under Civ.R. 60(B)(2) and (3). We disagree.

{¶ 14} Pursuant to Civ.R. 60(B), a court may relieve a party from a final judgment, order, or proceeding for the following reasons:

> (1) mistake, inadvertence, surprise or excusable neglect;
>
> (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(B);
>
> (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation or other misconduct of an adverse party;
>
> (4) the judgment has been satisfied, released or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or

---

Jgmt.) Therefore, under the terms of the brokerage agreement, Dublin owed Weiler Company an additional two percent of the purchase price, for a total of $213,150.

(5) any other reason justifying relief from the judgment.

Civ.R. 60(B)(1) through (5). To prevail on a Civ.R. 60(B) motion, a party must demonstrate that: (1) it has a meritorious claim or defense to present if the court grants it relief; (2) it is entitled to relief under one of the grounds stated in Civ.R. 60(B)(1) through (5); and (3) it filed the motion within a reasonable time and, when relying on a ground for relief set forth in Civ.R. 60(B)(1), (2), or (3), it filed the motion not more than one year after the judgment, order, or proceeding was entered or taken. *GTE Automatic Elec., Inc. v. ARC Industries, Inc.*, 47 Ohio St.2d 146 (1976), paragraph two of the syllabus. If the moving party fails to demonstrate any of these three requirements, the trial court should overrule the motion. *Rose Chevrolet, Inc. v. Adams*, 36 Ohio St.3d 17, 20 (1988). A trial court exercises its discretion when ruling on a Civ.R. 60(B) motion, and, thus, an appellate court will not disturb such a ruling absent an abuse of discretion. *Griffey v. Rajan*, 33 Ohio St.3d 75, 77 (1987).

{¶ 15} RiverPark first sought relief from judgment under Civ.R. 60(B)(2), which permits a court to set aside a judgment on the basis of "newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(B)." To receive relief under Civ.R. 60(B)(2), the moving party must prove: (1) the evidence is actually newly discovered, (2) the moving party exercised due diligence, and (3) the evidence is material, not merely impeaching or cumulative, and a new trial would probably produce a different result. *McBroom v. Bob-Boyd Lincoln Mercury, Inc.*, 10th Dist. No. 12AP-829, 2013-Ohio-1679, ¶ 11.

{¶ 16} For evidence to be newly discovered, the moving party must establish that it could not have discovered the evidence with due diligence at the time of the trial. *Wardeh v. Altabchi*, 10th Dist. No. 05AP-209, 2005-Ohio-6954, ¶ 9; *Gill v. Grafton Corr. Inst.*, 10th Dist. No. 04AP-1353, 2005-Ohio-3097, ¶ 16. Here, the trial court initially determined that RiverPark failed to show that it could not have, had it exercised due diligence, discovered that Weiler Company intended to enter the brokerage agreement with Dublin. True, Weiler Company and Dublin executed the brokerage agreement seven days after Weiler testified. However, at the trial, RiverPark's counsel did not question Weiler about any business dealings between Weiler Company and Dublin other than Weiler's own appraisal and consulting work. Thus, RiverPark's counsel did not inquire on cross-examination

regarding any past, current, or prospective brokerage agreements between Weiler Company and Dublin. Had RiverPark's counsel exercised due diligence and asked Weiler about any upcoming significant business transactions between Weiler Company and Dublin, he may have elicited testimony regarding the prospective brokerage agreement. Given this lack of due diligence, we conclude that the trial court did not abuse its discretion in determining the brokerage agreement was not newly discovered evidence.

{¶ 17} Evidence that is merely cumulative will not provide a basis for relief from judgment under Civ.R. 60(B)(2). *Mattingly v. Deveaux*, 10th Dist. No. 03AP-793, 2004-Ohio-2506, ¶ 12. Here, RiverPark premised its motion on evidence of a business deal between Weiler Company and Dublin. But, as the trial court pointed out, Weiler had already testified to multiple business dealings between Weiler Company and Dublin. Weiler stated that he had provided appraisal and valuation consulting services to Dublin for 15 to 20 years. In addition to appraising RiverPark's property, Weiler Company had appraised other property Dublin had appropriated to construct the shared-use path adjacent to Riverside Drive. Weiler called Dublin a "good client," and he testified that Dublin's payments for Weiler Company's appraisal and consulting services amounted to five to ten percent of Weiler Company's annual appraisal income, depending on the year. (Tr. at 217.) Taken together, this evidence informed the jury of Weiler Company's profitable business relationship with Dublin. The trial court, therefore, did not abuse its discretion in finding RiverPark's evidence regarding an additional business deal—the brokerage agreement—was cumulative to evidence already introduced, and thus, did not entitle RiverPark to relief under Civ.R. 60(B)(2).

{¶ 18} Like cumulative evidence, evidence that merely impeaches the credibility of a witness does not entitle a moving party to relief from judgment under Civ.R. 60(B)(2). *Dickinson v. Ball*, 10th Dist. No. 04AP-748, 2006-Ohio-3436, ¶ 12. According to RiverPark, the evidence at issue is relevant because the profit Weiler Company could acquire under the brokerage agreement biased Weiler in Dublin's favor and influenced his valuation of RiverPark's property. Given RiverPark's assertion, the trial court concluded that RiverPark solely sought to use the evidence regarding the brokerage agreement to challenge Weiler's credibility on his valuation of RiverPark's property. We find no abuse of discretion in the trial court's conclusion. Consequently, RiverPark's evidence did not entitle it to relief from judgment under Civ.R. 60(B)(2).

{¶ 19} In sum, we conclude that RiverPark failed to allege operative facts demonstrating that it was entitled to relief from judgment under Civ.R. 60(B)(2). We thus turn to whether RiverPark established entitlement to relief from judgment under Civ.R. 60(B)(3), which permits a court to set aside a judgment for fraud, misrepresentation, or other misconduct of the adverse party.

{¶ 20} Civ.R. 60(B)(3) applies when an adverse party's fraud, misrepresentation, or misconduct in obtaining a judgment prevents the other party from fully and fairly presenting its case. *Luke v. Roubanes*, 10th Dist. No. 16AP-766, 2018-Ohio-1065, ¶ 23. " 'Fraud on an adverse party may exist when, for example, a party presents material[ly] false testimony at trial, and the falsity is not discovered until after the trial.' " *Id.*, quoting *PNC Bank, N.A. v. Botts*, 10th Dist. No. 12AP-256, 2012-Ohio-5383, ¶ 15.

{¶ 21} Here, RiverPark claims Weiler testified falsely when he stated that he had "no dog in this hunt," (Tr. at 204), and when he certified in his January 2015 "Value Finding Appraisal Report" that he had "no personal interest or bias with respect to" Dublin, (Pl.'s Ex. D). Essentially, RiverPark asserts that Weiler actually had a bias in favor of Dublin, giving him a "dog in the hunt," because Weiler Company and Dublin entered into a completely separate, unrelated business deal subsequent to Weiler's appraisal of RiverPark's property and trial testimony. Like the trial court, we are not persuaded.

{¶ 22} When Weiler drafted the "Value Finding Appraisal Report" in January 2015, the Eiterman Road property was not even on the market. Consequently, when Weiler appraised the RiverPark property and certified his lack of personal interest or bias, Weiler could not have known that *over three years later* Weiler Company would broker the sale of the Eiterman property as the purchasing agent for Dublin. Logically, then, at the time Weiler signed the certification at issue, neither the brokerage agreement nor the profit Weiler Company would earn from the sale of the Eiterman property could have given Weiler a personal interest in Dublin or biased Weiler in favor of Dublin. RiverPark, therefore, has not shown that Weiler's certification is false.

{¶ 23} Weiler testified that he had "no dog in this hunt" much closer to the time of the execution of the brokerage agreement. However, there is no evidence that when Weiler testified he knew Dublin planned to hire Weiler Company to broker its purchase of the Eiterman property. If he did know, Weiler's actions do not demonstrate that the potential

brokerage agreement had any influence on him:  he appraised the RiverPark property at the exact same value he had appraised it in 2015.

{¶ 24} Moreover, to the extent Weiler's compensation for the appraisal or Weiler's prior business relationship with Dublin could be construed as giving Weiler a "dog in the hunt," the jury knew about both Weiler's compensation and business relationship.  Weiler explained that when he said he had "no dog in this hunt," he meant he "want[ed] the property owner to get every dime they're entitled to, but whatever [Dublin's] decision [was did] not affect [his] compensation." (Tr. at 204.)  RiverPark has not presented any evidence demonstrating that Weiler's explanation is false.

{¶ 25} Based upon this evidence, we conclude that the trial court did not abuse its discretion in denying RiverPark relief from judgment under Civ.R. 60(B)(3).  Because RiverPark failed to demonstrate entitlement to relief under one of the grounds stated in Civ.R. 60(B)(1) through (5), the trial court properly denied RiverPark's motion for relief from judgment.  Accordingly, we overrule RiverPark's first assignment of error.

{¶ 26} By RiverPark's second assignment of error, it argues that the trial court erred in denying it a hearing on its Civ.R. 60(B) motion.  We disagree.

{¶ 27} A party who moves for relief from judgment under Civ.R. 60(B) is not automatically entitled to a hearing on the motion.  *Cunningham v. Ohio Dept. of Transp.*, 10th Dist. No. 08AP-330, 2008-Ohio-6911, ¶ 35.  A court need not hold an evidentiary hearing where the Civ.R. 60(B) motion and the attached evidentiary material do not contain allegations of operative facts that would warrant relief under Civ.R. 60(B).  *State ex rel. Richard v. Seidner*, 76 Ohio St.3d 149, 151 (1996).

{¶ 28} We have concluded that the trial court did not abuse its discretion in concluding that RiverPark did not provide operative facts demonstrating entitlement to relief under any of the Civ.R. 60(B) grounds.  We thus conclude that the trial court did not err in denying RiverPark a hearing on its Civ.R. 60(B) motion.  Accordingly, we overrule RiverPark's second assignment of error.

{¶ 29} For the foregoing reasons, we overrule RiverPark's first and second assignments of error, and we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

SADLER and JAMISON, JJ.,  concur.